CLYDE ARBUCKLE *v.* STATE OF INDIANA.

[No. 2-975A252. Filed July 12, 1977. Rehearing granted August 16, 1977.]

*Michael T. Conway,* of Indianapolis, for appellant.

530

*Theodore L. Sendak,* Attorney General, *K. Richard Payne,* Deputy Attorney General, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J.—This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

Defendant-appellant Arbuckle appeals from a conviction for the commission of a felony while armed, to wit: robbery.

We affirm.

## FACTS

At 3:20 a.m. on November 24, 1974 Melvin B. Herman closed his business establishment and drove with a companion to the Waffle House restaurant at the intersection of West 30th and Georgetown Road in Indianapolis. Upon leaving the car Herman and his companion were approached by the defendant Arbuckle. Arbuckle removed a large pistol from beneath his jacket, pointed it at Herman, and ordered the men to move across the parking lot. Part of the way across the lot Arbuckle yelled, "God dammit, hurry up," and he fired a shot into the pavement. He then took Herman's wallet which contained identification papers, credit cards, and between four hundred and five hundred dollars in cash. Arbuckle escaped in a maroon 1973 or 1974 Ford.

Five days later Arbuckle was apprehended in a car fitting the description of the getaway car. At that time he had in his possession certain articles which bore Herman's name. Herman later identified these articles as his and also identified Arbuckle as the man who robbed him.

## ISSUES

1. Was the evidence submitted at trial sufficient to convict the defendant of the commission of a felony while armed, to wit: robbery?

2. Did the court err in not instructing the jury about certain lesser included offenses for which the defendant tendered instructions?

3. Did the court err in seating the trial jury:

   a. by selecting the jurors for this trial from among the members of a much larger regular panel of jurors, and

   b. by allowing members of the large regular panel to serve on more than one trial jury during a calendar year?

## DISCUSSION AND DECISION

*Issue One:*

Arbuckle contends that the evidence presented at trial was insufficient to support his conviction. He points out that a mug shot taken of him shortly after his arrest on November 29, 1974 shows that he had a small growth of chin whiskers just below his lip. Herman saw no chin whiskers on the person who robbed him. Nevertheless Herman identified Arbuckle as the man who committed the robbery. Arbuckle contends that Herman's failure to notice any chin whiskers on the person who robbed him indicates that he was not the man and that Herman's identification of him was not properly made.

Arbuckle also points out that the signature on a receipt from one of the stolen credit cards was found to be neither his nor Herman's. He contends that this evidence would indicate that some other person had stolen and used the credit card.

In reviewing the sufficiency of the evidence on appeal this court will not weigh the evidence nor resolve the question of credibility of witnesses, but will look to the evidence most favorable to the state and the reasonable inferences therefrom which support the verdict of

the jury. See *Stiles* v. *State* (1973), 156 Ind. App. 675, 298 N.E.2d 466.

The evidence most favorable to the state reveals that at gunpoint Herman was forced to give Arbuckle his wallet containing identification papers, credit cards and money which were later found on Arbuckle when apprehended. Arbuckle was identified by Herman as the person who robbed him. Any ambiguities in the evidence, such as those alluded to above by the defendant, were resolved by the jury in favor of the state. As such we find that there was sufficient evidence of probative value upon which the jury could reasonably infer the defendant's guilt.

Our determination that there was sufficient evidence upon each element of the crime charged disposes of Arbuckle's contentions that the judgment was contrary to law and the trial court erred in not granting his motion for a judgment on the evidence. Further Arbuckle's last two contentions were waived by his failure to cite this court any legal authority in support thereof. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

*Issue Two:*

Arbuckle has waived the right to present this issue on appeal for the reason that he failed to include a verbatim presentation of the disputed jury instructions in the argument portion of his brief. AP. 8.3(A)(7).

*Issue Three:*

Arbuckle contends that the large regular panel of jurors from which the trial jury is chosen is greater than that which is authorized by statute. He contends that the regular jury panel should consist of twelve persons. To support his argument he cites IC 1971, 35-1-30-1 (Burns Code Ed.) which provides:

". . . The petit or trial jury used in civil cases shall act also in criminal cases, but shall consist of twelve (12) qualified jurors; and where a jury trial is demanded, the sheriff shall call a jury in the manner prescribed by law or as directed by the court. . . ."

He also cites *Benadum* v. *State* (1914), 182 Ind. 510 at 513, 107 N.E. 8 wherein the court said:

". . . The statutes governing the drawing and impaneling of jurors in criminal trials do not contemplate that the regular panel shall at any time be made up of more than twelve jurors and it may not lawfully contain a greater number. . . ."

Some confusion has arisen over what constitutes a jury panel. Arbuckle would have us believe that the regular jury panel is the group of twelve persons which constitutes the petit or trial jury, and he cites *Benadum,* *supra,* to support his assertion. He is correct to the extent that the trial jury is a panel or group of twelve jurors. However, we construe the term *jury panel,* as used in the pertinent statutes, to mean a *large regular panel* of jurors from which the *trial jury panel* is chosen. This construction becomes obvious when the statutes which pertain to the jury selection system are examined. IC 1971, 33-4-5-1 (Burns Code Ed.) provides:

*"The circuit court shall, during the month of November, appoint for the next calendar year two [2] persons,* at least one [1] of whom shall be a resident of the town or city in which the court shall be held, *as jury commissioners,* who shall be freeholders and voters of the county, well known to be of opposite politics, and of good character for intelligence, morality and integrity, and cause them to appear and take an oath or affirmation in open court, to be entered of record in the order-book of the court . . ." (Our emphasis)

IC 1971, 33-4-5-2 (Burns Code Ed.) provides:

*"Said commissioners shall immediately,* from the names of legal voters and citizens of the United States on the latest tax duplicate and the tax schedules of the county, examine for the purpose of determining the sex, age and identity of prospective jurors, and *proceed to select* and

deposit, in a box furnished by the clerk for that purpose, *the names,* written on separate slips of paper of uniform shape, size and color, *of twice as many persons as will be required by law for grand and petit jurors in the courts of the county, for all the terms to commence with the calendar year next ensuing.*

\* \* \*

"In counties having a population of more than six hundred fifty thousand [650,000], according to the last preceding United States census, said commissioners, *may,* upon an order made by the judge of the circuit court and entered in the records of the circuit court of said county *make such selections and such deposits monthly instead of annually* and may omit the personal examination of prospective jurors, the examination of voters lists, and make selection without reference to commissioners' districts. . . ." (Our emphasis)

IC 1971, 33-15-22-1 (Burns Code Ed.) provides:

"During the month of December, and at such other times as the judge shall deem necessary, the judge of any court of record in which jury trials are had shall by written order direct the clerk to make ready for the drawing of either grand jurors or petit jurors, or both. The clerk, having first well shaken the box, shall open the same in his office, and in the presence of the jury commissioners *he shall publicly draw therefrom such number of names of competent persons as the judge of such court shall have ordered to be summoned as prospective jurors for such court.* At such drawing the names "of competent persons shall be first drawn for each court having criminal jurisdiction in the *number specified by the court* in such order. The clerk and the jury commissioners shall also, and in the same manner draw for each of such circuit, superior, juvenile, probate and other courts, respectively, *the number of names of persons to serve as jurors for such courts, respectively, as the judges of such courts shall have specified in such written orders. The jurors, and each of them, shall serve three [3] months or for a lesser period as the judges of such courts, respectively, shall order,* by written order duly entered sufficiently long before trial or grand jury sessions to permit counsel to know and to investigate the panel of jurors for such term or part of the term: Provided, That the order of names as listed in the panel and as called for service shall be the same order as that in which the names are drawn from the box, as herein pro-

vided. The clerk shall at the time of drawing such prospective jurors, enter a list of names so drawn, upon the order-book of the court, in the same order in which the names are drawn from the box, and he shall attach his certificate of the fact. *The clerk shall issue venires for such jurors as such courts may direct.* The sheriff or bailiff shall then call the jurors to the jury box in the same order as that in which their names are drawn, from the box and certified thereto." (Our emphasis)

A careful reading of the above statutes shows that the list of jurors selected according to IC 1971, 33-4-5-2, *supra,* forms a superbody of prospective jurors from which, in compliance with IC 1971, 33-15-22-1, *supra,* the judge of any court shall direct the clerk to draw the names of a specified number of jurors who will serve as a regular panel for a maximum of three months. From that regular panel of jurors which serves for three months, the clerk shall issue venires in order to form a trial jury, as the court may direct. IC 1971, 33-15-22-1, *supra,* refers to the three month regular jury panel and IC 1971, 35-1-30-1, *supra,* refers to the trial or petit jury. The former is limited in number by reasonableness; the latter is limited to twelve in number.

The defendant relies upon the holding in the *Benadum* case to prove the correctness of his assertion that the regular panel for the term of the court shall not be made up of more than twelve jurors. The principle in the *Benadum* case was affirmed in *Flatter* v. *State* (1914), 182 Ind. 514 at 520; 107 N.E. 9 wherein the court said:

".. . It must be conceded that the word jury imports twelve men. The statute provides that twelve men shall constitute the regular panel or the trial panel of a jury in either civil or criminal cases if demanded. Acts 1913 p. 15, § 2098 Burns 1914. . . ."

Both *Benadum* and *Flatter* were correct in light of the statutes in effect at that time. The most pertinent statute was found in Acts 1881, Ch. 69, § 3, p. 558 as amended by Acts 1913, Ch. 10, § 1, p. 15, and provided:

"... He [the clerk] shall also, within the same period preceding any term of the circuit, superior or criminal court, in the same manner, draw for each of such courts, respectively, *twelve names of persons as petit jurors for such courts, respectively, at such terms;* and he shall record and certify such drawing upon the proper order-book of such courts, respectively, as is required concerning the grand jury; and he shall issue venires for such juries as such courts, or the judges thereof in vacation, may direct. In counties where the superior court may have more than one judge, said clerk shall, if so directed by such court or judges, in like manner, draw one or more additional petit juries for such court at any term. *After a petit jury has served four weeks during any term of court, such court may, in its discretion, discharge it, and* direct the clerk in the same manner, at any time, to draw another petit jury, and summon the same." (Our emphasis)

Therefore at the beginning of a term the clerk would draw the names of twelve qualified individuals who would comprise the regular panel for a four week period or longer in the discretion of the court. The regular panel would then form a trial or petit jury of twelve. When *Benadum* and *Flatter* were handed down both the trial jury and the regular panel were required to consist of twelve jurors. When one of the regular panel members was successfully challenged then a talesman juror was appointed to bring the number of the twelve jury back to twelve. See Acts 1881, Ch. 38, § 366, p. 308; also IC 1971, 34-1-20-8 (Burns Code Ed.).

The holdings in *Benadum* and *Flatter,* with regard to the number of jurors required to be on the regular panel from which the trial jury is selected, are no longer the law in Indiana. Acts 1881, Ch. 69, § 3, p. 558 as amended has been specifically repealed by Acts 1959, Ch. 38, § 2, p. 102 and replaced by IC 1971, 33-15-22-1, *supra*. The current statutes as outlined above give the judge of any court the power to specify the number of jurors which will constitute the three month panel which will serve his respective court. See IC 1971, 33-15-22-1, *supra*. No actual number is specified by statute, as was done formerly. Therefore the court may appoint any

reasonable number which in the court's discretion will meet its need for jurors during the specified period. However, the trial or petit jury itself is limited to twelve.

Arbuckle also contends that the system of using members of the regular jury panel to serve repeatedly on different trial juries during the three month existence of the panel is a violation of IC 1971, 33-1-1-1 (Burns Code Ed.) which states:

"*It shall not be lawful for any officer or officers, or jury commissioner or commissioners*, charged with the selection of a panel of petit jurors to serve in any circuit court, superior court or criminal court of this state, *to select any person to serve as a juror in either of said courts who has served as a juror in either of said courts in such county during the year immediately preceding such selection;* and it shall be unlawful for any officers of either of said courts to select any person to serve as a talesman upon any jury therein who has served as a juror in either of said courts of the county during the year immediately preceding such selection; and should any person be .selected as such juror contrary to the provisions of this act [section], it shall be a sufficient cause of challenge." (Our emphasis)

The language in this statute has long been construed to mean that a person may be challenged for having sat on a jury within the previous year only if he is not a member of the regular panel. *The City of Goshen* v. *England* (1889), 119 Ind. 368, 21 N.E. 977. In the case at bar the disputed jurors were members of the large regular panel.

We now hold that if a person is a member of the large regular panel he may serve repeatedly as a regular trial juror at any time during that large regular panel's legal existence.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 364 N.E.2d 772.

## ON APPELLANT'S PETITION FOR REHEARING

LOWDERMILK, J.—Appellant has filed his petition for rehearing and we believe it merits our writing thereon.

In our original opinion this court determined that appellant's Issue Number Two in his brief which was "Did the court err in not instructing the jury about certain lesser included offenses for which the defendant tendered instructions" was waived by appellant's failure to set out his tendered instructions verbatim in his brief under Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

Even though the appellant failed to set out a copy of his tendered instructions in his brief the State of Indiana in its Answer brief set out a verbatim copy of said tendered instructions *thus accomplishing the purpose of the rule.*

In the case of *Teeple* v. *State ex rel.* (1908), 171 Ind. 268, 86 N.E. 49, wherein the sufficiency of Appellant's brief was questioned because of an omission of a ruling and exception thereto as required by the court's rule the court held, "It is not necesary to determine whether such ruling and exception thereto are sufficiently set forth in appellant's brief, because the relators have cured the defect, if any, in appellant's brief by copying the order-book entry of said ruling and appellant's exceptions thereto in their brief, thus accomplishing the purpose of the rule." See also, *State* v. *Heslar* (1972), 257 Ind. 625, 277 N.E.2d 796.

Appellant further contends that the tendered instructions were adequately identified by reference in his brief to them by referring to the transcript pages and lines.

To hold such to be good we must stretch the elasticity of AP 8.3(A)(7) to well nigh its breaking point. However such has been held to be adequate in *Moore* v. *Funk* (1973), 155 Ind. App. 545, 293 N.E.2d 534 at p. 536.

We therefore grant Appellant's Petition For Rehearing.

## ON REHEARING

Appellant's tendered and refused instructions about which he complains were correct statements of the law.

The information on which appellant was tried charges him with the Commission of a Felony While Armed, to wit: Robbery which reads in part as follows: ". . . A *handgun* held in the hand of *Clyde T. Arbuckle*, . . . did then and there unlawfully, feloniously and forcibly by violence. . . ." (Our emphasis)

Appellant's counsel has cited many cases defining for this court when a crime may properly be considered a lesser included offense of a crime charged. However in the interest of time we will not set out these definitions and application of the rule as it has been so well defined and set out in the landmark case of *Hazlett* v. *State* (1951), 229 Ind. 577, 99 N.E.2d 743.

In *Hazlett* v. *State, supra,* the late Judge Emmert in speaking for the court at 229 Ind. 585, 586, 99 N.E.2d 746 said:

"The words of the affidavit, 'unlawfully, feloniously, and forceably and by violence,' charged a battery, and an assault which is included within the charge . . . of a battery. . . . The included offenses of assault or assault and battery with intent to commit a felony, as defined by § 10-401, Burns' 1942 Replacement [IC 35-1-54-3], were included in the charge of robbery by violence. . . . Appellant's requested instructions which would have informed the jury they could find the appellant guilty of assault and battery with intent to commit a felony should have been given.

A charge of assault and battery with intent to commit a felony 'necessarily embraces a charge of simple assault and battery'. . . . Since the battery was charged, the lesser misdemeanor of assault was included within the charge. . . . It was error for the trial court to refuse to give appellant's requested instructions on the included misdemeanors of assault and battery, and assault." (Citations omitted) (Our insertion). See also, *Hammer* v. *State* (1976), 265 Ind. 311, 354 N.E.2d 170 at p. 173.

Appellant having tendered adequate instructions on lesser included offenses of the crime charged together with an in-

struction with forms of verdicts to be rendered on lesser included offenses was entitled to have the jury instructed as requested on lesser included offenses. It was the court's mandatory duty to submit them to the jury or give adequate instructions of his own on their subject matter. His failure to instruct on lesser included offenses was reversible error.

Judgment reversed and cause remanded for a new trial.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 366 N.E.2d 200.